IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 7 2010

David J. Bradley, Clerk of Court

| | |
|---|---|
| SUN COAST PLUMBING CO., INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. B-09-204 |
| § | |
| SHELL OFFSHORE INC., BP § | |
| EXPLORATION & PRODUCTION, § | |
| INC., CHEVRON U.S.A., INC., § | |
| NEXEN PETROLEUM OFFSHORE § | |
| U.S.A. INC., and UNION OIL § | |
| COMPANY OF CALIFORNIA, § | |
| § | |
| Defendants. § | |

## OPINION & ORDER

BE IT REMEMBERED that on April 7, 2010, the Court **DENIED** Defendants Shell Offshore, Inc. ("Shell"), BP Exploration & Production, Inc. ("BP"), Chevron U.S.A., Inc. ("Chevron"), Nexen Petroleum Offshore U.S.A. Inc. ("Nexen"), and Union Oil Company of California's ("Union Oil") Amended Motion for Summary Judgment. Dkt. No. 27.

Plaintiff Sun Coast Plumbing Co., Inc. ("Sun Coast") filed the instant suit on July 28, 2009, in the 404th Judicial District Court for Cameron County, Texas. Plaintiff seeks to foreclose on a mineral lien for material and labor it provided for the construction of living quarters to be attached to the hull of the Perdido Regional Development Spar ("Perdido Spar") under contract with Delcor USA, Inc. ("Delcor"), Shell's general contractor. Dkt. No. 1, Ex. 2. Defendants removed the action to this Court on August 31, 2009, and filed their amended answer on October 19, 2009. Dkt. Nos. 1, 12. On December 10, 2009, Defendants filed a motion for summary judgment, which they amended on January 8, 2010. Dkt. Nos. 14, 27.

In their motion, Defendants seek partial summary judgment on three of their defenses to Plaintiff's claim. Specifically, Defendants request the Court grant summary judgment on the following issues: (1) Plaintiff's plumbing work on the living quarters was not related to "mineral activities" as required to establish a valid mineral lien under Texas law; (2) Plaintiff's plumbing work is too geographically attenuated to establish a valid mineral lien, because the plumbing work was performed in Harris County, Texas, while Shell's lease is located hundreds of miles away in the Gulf of Mexico; and (3) Plaintiff has not provided any proof that its lien is filed in the proper county. Dkt. No. 27, at 1.

Plaintiff responds that its work was material and necessary to Defendants' mineral activities, the mineral lien statute does not include a requirement that the work be performed on or near the mineral lease, and the evidence indicates that Cameron County is the proper location in which to file its lien. Dkt. No. 44, at 1-2.

## Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing Lujan v.

Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### Relation to the Mineral Activities

Defendants argue that the Texas Property Code ("TPC") limits mineral liens to "labor or services related to mineral activities." Dkt. No. 27, at 3 (citing TEX. PROP. CODE § 56.002). Under the TPC, "mineral activities" is defined as "digging, drilling, torpedoing, operating, completing, maintaining or repairing and oil, gas, water well, an oil or gas pipeline, or a mine or quarry." *Id.* (citing TEX. PROP. CODE § 56.001). Defendants argue that Sun Coast's plumbing work, which was installed in the living

quarters for the Perdido Spar on the Defendants' mineral lease, does not qualify as work "related to" the mineral activities on the lease. *Id.* Defendants argue the work was fabricated in a yard hundreds of miles from Defendants' lease and the plumbers never worked on the lease. Dkt. No. 44, at 3 (citing TEX. PROP. CODE § 56.002).

Plaintiff responds that the following facts are undisputed by the Defendants: (1) Plaintiff provided materials, machinery, supplies, and labor used in the construction of the living quarters for the Perdido Spar, Dkt. No. 44, at 3; (2) the work Plaintiff performed was "central to, necessary to, and related to the mineral activities that Shell is conducting on the Perdido Spar," *id.* at 4 (citing *id.*, Ex. D, at 22-23); (3) Plaintiff's work was related to Shell's past, current, and/or future drilling, operating, completing, maintaining, or repairing of oil and gas wells and the pipeline at the Perdido Spar, *id.*; and (4) drilling began on the lease in 2007, before Plaintiff's work had begun, and since then workers have begun hook-up, construction, and commissioning of the Perdido Spar. *Id.* at 6-9.

Plaintiff argues that: (1) under the TPC, a mineral subcontractor includes a person who "furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or with a subcontractor," Dkt. No. 44, at 3; (2) plumbing is similarly related to the mineral activities, when it is used to house the workers engaged in mineral activities on the Perdido Spar, *id.* at 6; (3) this Court should follow the lead of other Texas courts and liberally construe the mineral lien statute in favor of protecting mineral subcontractors, *id.* at 5 (citing Wesco Distribution, Inc. v. Westport Group, Inc., 150 S.W.3d 553, 557 (Tex. App.–Austin 2004, no pet.)); and (4) Texas courts have broadly interpreted the scope of mineral activities to include provide catering services to offshore oil workers. *Id.* (citing World Hospitality Ltd. v. Shell Offshore, Inc., 699 F. Supp. 111, 113 (S.D. Tex. 1988)).

Defendants reply that Plaintiff's work is too tenuously related to the mineral activities as a matter of law to support a mineral lien. Dkt. No. 45, at 2. Defendants also deny that the undisputed statements of Shell's corporate representatives cannot be used as proof of legal conclusions on whether Plaintiff's work is related to the

mineral activities. *Id.* at 2-3. Defendants argue that the *World Hospitality* case cited by Plaintiff actually stands for the proposition that proximity, not the type of work, may weigh in favor of finding a mineral lien. *Id.* at 3-4. Finally, Defendants argue that though an oil buyback had begun by the pipeline operator on the mineral lease, it was not being done by the Defendants, and did not amount to the conducting of "mineral activity" on the leased property, because it did not involve drilling, completing, maintaining, or operating on the mineral lease. *Id.* at 4-5.

Plaintiff, in sur-reply, argues that Defendants ignore the plain-wording of the statute that includes contractors such as Plaintiff. Dkt. No. 47, at 2. Plaintiff argues that the TPC does not restrict a mineral lien to traditional oil and gas contractors or to workers located on the mineral lease itself. *Id.* Plaintiff argues that by including protection for those who furnish materials, machinery, and supplies, it explicitly incorporates the possibility of liens by off-site contractors.

In analyzing the Defendants' motion, the Court notes that although the Defendants have moved for summary judgment under Fed. R. Civ. P. Rule 56, most of the arguments in their motion as to the relation of the Plaintiff's work to the mineral activities attempt to attack the legal sufficiency of the Plaintiff's claim rather than the evidence in support of the Plaintiff's motion. The Defendants' motion is supported by the following evidence on the issue of the relation of the work to the mineral activities: (1) the affidavit of Tom Damazio ("Damazio"), Project Manager for Delcor, who avers that Plaintiff's work was performed hundreds of miles from the mineral lease; and (2) the affidavit of Kurt Shallenberger ("Shallenberger"), Senior Staff Facilities Engineer for EP Production for Shell, who states that none of the work was performed on the lease and that Plaintiff did not provide any materials or workmen to Shell's lease, because the work was performed in Houston. Dkt. No. 27, Ex. A, D. Plaintiff does not dispute that its work was performed in Houston. Conversely, it is undisputed that Plaintiff provided materials, machinery, supplies, and labor used in the construction of the living quarters for the Perdido Spar. Dkt. No. 44, at 3; Ex. D, at 22-23, 100. Therefore, the question presented to the Court is whether plumbing work to be

incorporated into the living quarters of an offshore platform to be installed on a mineral lease is sufficiently related to the mineral activities on the property to support a mineral lien against the lease.

The TPC defines "mineral activities" as "digging, drilling, torpedoing, operating, completing, maintaining or repairing an oil, gas, water well, an oil or gas pipeline, or a mine or quarry." TEX. PROP. CODE § 56.002. It is undisputed that the plumbing work provided by Plaintiff will help Shell complete the Perdido Spar living quarters, which in turn will be used by the crew of the Perdido Spar in operating and maintaining the mineral property. Providing for the housing and support of Defendants' offshore workers is critical to being able to operate, complete, and maintain the mineral activities on the property. The Court holds that where the work done to support a mineral property lien is to be incorporated into an offshore platform used to house and support the crew that will work on exploiting a mineral lease, the work is sufficiently related to the mineral activities on the mineral lease to support a mineral property lien under the TPC.

As the Texas Supreme Court held, "[t]he ordinary, usual meaning of the word 'operate' is 'To put into, or to continue in, operation or activity; to manage; to conduct; to carry out or through; to work; as to operate a machine or motor vehicle.'" Big Three Welding Equipment Co. v. Crutcher, Rolfs, Cummings, Inc., 149 Tex. 204, 210-211 (1950) (citing Webster's New International Dictionary; Brace v. Rashaw, 45 A.3d 207, 208 (Vt. 1948) (interpreting an older version of the Texas mineral property lien statute in holding that the dismantling of an oil rig is not operation or maintenance of the mineral property)). The definition endorsed by the Texas Supreme Court contemplates work done to put into operation an offshore platform, like that Plaintiff alleges it performed. Furthermore, Plaintiff meets the requirements of a mineral subcontractor since it "furnishes or hauls material, machinery, or supplies used in mineral activities under contract with a mineral contractor or with a subcontractor." Plaintiff furnished labor and materials used in construction and operation of the Perdido Spar.

The Court's holding continues the tradition of Texas courts in interpreting Texas

lien statutes to grant liens in favor of "a person who by his labor or material expended on improvements made on the land of another, under contract, express or implied, that this shall be paid for, thereby increases its value, and ought to the extent of the contract price or value of the thing furnished, to have a lien on the land, of which the improvement becomes a part, to secure payment." *Big Three*, 149 Tex. at 211 (citing Lippencott v. York, 86 Tex. 276, 280 (1893)). Therefore, the Court holds that as a matter of law, plumbing work on the living quarters of an offshore platform can be sufficiently related to the mineral activities to qualify for a mineral property lien under the TPC.

To the extent that Defendants attempt to present the issue as a question of the sufficiency of the Plaintiff's evidence, Defendants have failed to demonstrate that no genuine issue of material fact exists that Plaintiff's work is related to the mineral activities on the lease. Plaintiff presents the deposition testimonies of Richard Quick, II ("Quick"), Anthony Salem ("Salem"), and Terry Cook ("Cook"), Shell's corporate representatives, who stated that the plumbing work was a necessary and central aspect of the spar which will be engaged in the mineral activities of operating, completing, and maintaining Shell's mineral interest. Dkt. No. 44, at 8-9; Ex. D, at 22-23, 100. Although these admissions do not act as legal conclusions, they do operate as evidence that the plumbing work is related to the mineral activities on the lease. In rebuttal of this evidence, Defendants present no conclusive evidence that the Plaintiff's work is unrelated to the mineral activities on the property. Dkt. No. 27, at 3-4. The only rebuttal evidence the Defendants provide is their own affidavits that Plaintiff performed its work hundreds of miles away from the mineral lease, an undisputed fact. *See id.*, Ex. A (Affidavit of Damazio); Ex. D (Affidavit of Shallenberger). As discussed *infra*, although this is perhaps evidence that cuts against Plaintiff's contention that the work is related to the mineral lease, it is not sufficient to foreclose the possibility that a genuine issue of material fact exists whether the Plaintiff's work is related to the mineral activities. Therefore, Defendants' motion for summary judgment on this issue is denied.

### Remoteness from the Mineral Property

Defendants argues that Plaintiff's lien is invalid because the living quarters were constructed hundreds of miles away from Shell's offshore lease. Dkt. No. 27, at 4. In support of their position, Defendants cite *World Hospitality*, which in considering a lien for offshore catering services, found relevant that the work was performed "on the well site." *Id.* (citing *World Hospitality*, 699 F. Supp. at 112). Defendants argue that Plaintiff never sent any materials to the offshore lease while mineral activities were ongoing on the property and did not send any employees to perform work on the lease. Rather, Defendants argue all of Plaintiff's work occurred in Harris County.

In response, Plaintiff argues that neither the statute nor the decision in *World Hospitality* requires that the work be performed on the well site. Dkt. No. 44, at 9-10. Plaintiff argues that the decision by a Texas appellate court in *Gourley v. Iverson Tool Co.*, interpreting a predecessor to the current mineral property lien statute, allowed for a lien for repair work on drilling tools done several miles from the lease site. 186 S.W.2d 726, 733-34 (Tex. Civ. App.–Fort Worth 1945, writ ref. w.o.m.). There, Plaintiff argues that the Court noted that the legislative intent was not to limit the scope of the lien to only protect work performed on the lease. *Id.* at 11. Finally, Plaintiff argues that Fifth Circuit has interpreted a similarly-worded Louisiana statute to include work performed onshore. *Id.* at 11-12 (citing Philips Petroleum Co. v. Best Oilfield Services, Inc., 48 F.3d 913, 916 (5th Cir. 1995) (allowing lien for work unloading and cleaning of a barge onshore); C.F. Dahlberg & Co. v. Chevron U.S.A., Inc., 836 F.2d 915, 916-918 (5th Cir. 1988) (allowing lien for galvanizing work of component parts incorporated into construction of oil platform, particularly in light of the fact that galvanizing work is not normally done offshore).

In reply, Defendants argue that *Gourley* extends mineral lien protections only to work done related to mineral activities, and therefore, does not apply to this case where the work done was not related to mineral activities. *Id.* at 5. Defendants also argue that the interpretation of the Louisiana statute by the Fifth Circuit is

inapplicable, since the Louisiana statute is much more encompassing in scope and purpose than the Texas statute and therefore the cases lack probative value. *Id.* at 6.

In sur-reply, the Plaintiff argues that the Fifth Circuit cases confronted very similar issues to those presented to the Court, and therefore their interpretation is illustrative. Dkt. No. 47, at 2.

The Court holds that there is no requirement under the Texas statute that the work be performed on the mineral lease itself. As Texas state courts have found, the location of the work is but one factor that could be considered in the analysis of whether the work is related to the mineral activities on the lease. *Gourley*, 186 S.W.2d at 733-34; *see also World Hospitality*, 699 F. Supp. at 112. Here, Defendants have presented evidence that the work done by Plaintiff was located hundreds of miles from the mineral lease. *See* Dkt. No. 27, Ex. A (Affidavit of Tom Damazio, Project Manager for Delcor); Ex. D (Affidavit of Kurt Shallenberger, Senior Staff Facilities Engineer for Shell). However, Plaintiff has argued and presented evidence that the work is integral to the assembly of the Perdido Spar, which itself is integral to the exploitation of the mineral lease. Dkt. No. 44, Ex. D, at 22-23, 100 (Deposition of Quick, Salem, and Cook). Furthermore, the plumbing work, like the repair of drilling tools, is not the sort of work which is normally possible to do on an offshore mineral lease. Therefore, the Court finds that the Defendants have failed to demonstrate that no genuine issue of material fact exists whether the work is too geographically remote from the mineral lease to support a mineral lien against the property. As a result, Defendants' motion for summary judgment on this issue is denied.

### Whether the Lien is Filed in the Proper County

Finally, Defendants argue that the Plaintiff has not presented any evidence that the mineral lien is filed in the proper county. Dkt. No. 27, at 5. In response, Plaintiff argues that the Defendants have presented no evidence that the Plaintiff has filed in the wrong county, and thus have failed to meet their summary judgment obligation. Dkt. No. 44, at 13. Plaintiffs also submit the affidavit of Jill F. Hasling ("Hasling"), a certified consulting meteorologist and president of the Weather Research Center. *Id.*

at 13-14. In her affidavit, Hasling states that she has mapped the location of the Perdido Spar and charted the geographic points away from the Perdido Spar along the Texas coast. *Id.*, Ex. C, at 1-2. In doing so, she has determined that Cameron County is the closest county in Texas to the mineral lease. *Id.* at 2-3.

Because Texas law applies to the perfection of a lien claim on the Outer Continental Shelf adjacent to Texas, to perfect its lien against Defendants' lease, Plaintiff is required to file a lien claim affidavit in a real property records of the nearest county within six months of the last day labor and supplies were furnished. TEX. PROP. CODE § 56.021; 43 U.S.C. § 1333(a)(2)(A).

The Court finds that the Defendants has failed to show that no genuine issue of material fact exists as to whether Cameron County is the improper place for the Plaintiff to file its lien. The Plaintiff has presented the uncontroverted affidavit of Hasling, indicating that Cameron County is the closest county to the mineral lease. Therefore, the Court finds that the Defendants have failed to meet their burden of proof. As a result, Defendants' motion for summary judgment on this issue is denied.

## Conclusion

Based on the foregoing, the Court **DENIES** Defendants' Amended Motion for Summary Judgment. Dkt. No. 27.

DONE at Brownsville, Texas, on April 7, 2010.

Hilda G. Tagle
United States District Judge